**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Michelle London-Marable and Frederick Marable, husband and wife,<br><br>    Plaintiffs,<br><br>v.<br><br>The Boeing Company, a Delaware Corporation; et al.,<br><br>    Defendants. | No. CV-04-2611-PHX-MHM<br><br>**ORDER** |

       Plaintiff Michelle London-Marable was employed by Boeing for twenty-two years. In January of 2001, the Plaintiff began a medical leave of absence due to abdominal pain, bloating and reflux. Aetna approved short term disability benefits for the Plaintiff from January 19, 2001 through March 1, 2001, and eventually extended benefits until June 25, 2001. Abdominal problems continued to plague the Plaintiff, and she was approved for further short term disability in October 2002, and again in December 2002.

       In February, 2003, Aetna informed the Plaintiff by letter that it would not approve any further short term disability benefits. The Plaintiff submitted additional medical records from her doctors, but Aetna replied that the additional records did not warrant a reversal of its decision to terminate benefits. Aetna invited the Plaintiff to file a written appeal, which she did on February 28, 2003.

The Plaintiff later informed Aetna that she had additional information from her mental health provider and cardiologist that would support her continued receipt of short term disability benefits. Aetna granted the Plaintiff a two-week extension in order to receive and review the new information.

After considering the additional information provided by the Plaintiff's health care providers, Aetna informed the Plaintiff on May 7, 2003 that it was upholding the decision to terminate her short term disability claim.

The Plaintiff sued both Aetna and the Boeing Employee Benefits Plan Committee ("BEBPC"), alleging a violation of ERISA 502 § (A)(1)(B).[1] (Third Amended Complaint, Dkt. # 36). After consideration of the pleadings and the administrative record, the Court issues the following order.

## I. Standard of Review

Both parties agree that the standard governing this Court's review of the denial of benefits is the deferential abuse of discretion standard. (Motion for Judgment, Dkt. #63); (Response, Dkt. #68). "Where the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999). The review is limited to the plans at issue and the information contained in the administrative record. Id. at 944.

The Plaintiff argues that Aetna has a conflict of interest because it is both a plan administrator <u>and</u> an insurer/funding source for the plans. (Response, Dkt. #68). Although the ERISA Defendants deny that Aetna is a plan administrator, the Court finds it unnecessary

---

[1] Defendant BEBPC is the Plan Administrator. Defendant Aetna, according to the policy documents, "is a fiduciary with complete authority to review all denied claims for benefits." (Group Life and Long Term Disability Policy, AETNA000288, Dkt. #62, Tab 2). Aetna has authority to "determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of [the] policy." Id.

to resolve the question. The abuse of discretion standard of review applies regardless of whether there is a conflict of interest. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965 (9th Cir. 2006) ("if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r]' in determining whether there is an abuse of discretion.") (internal quotations and citations omitted). The ERISA Defendants admit that Aetna makes benefit determinations, as well as provides funding for the long term disability plan. (Motion for Judgment, Dkt. #63). Therefore, the Court's review for abuse of discretion will be informed by the "nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." (Id. at 967) ("This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict.").

## II. Background

The Plaintiff was employed by Boeing from May 19, 1982 until May 21, 2004. The last position she held was a Senior Administration Analyst[2], which the Plaintiff started performing in 1995. During her employment, Boeing made available to the Plaintiff company-paid short term and long term disability plans that were governed by ERISA, 29 U.S.C. § 1002(1).

Under the Plans, an employee is eligible to receive short term disability ("STD") benefits if (1) the participant is disabled as a result of accidental injury or illness; (2) as a result, the participant is earning 80 percent or less of indexed predisability earnings; and (3) the accidental injury or illness prevents the participant from performing the material duties of the participant's own occupation or other appropriate work Boeing makes available. After 26 weeks of STD benefits the participant may be eligible for long term disability ("LTD") benefits.

---

[2]The record references the Plaintiff's position as both "Senior Administration Analyst" and "Data Processor."

### A. The Plaintiff's Prior Receipt of STD Benefits

The Plaintiff began a medical leave of absence on January 1, 2001, resulting from abdominal pain, bloating and reflux. Her abdominal complaints resulted in various surgeries, and the Plaintiff received STD benefits from January 1, 2001 until June 25, 2001.

On October 9, 2002, the Plaintiff underwent an additional abdominal surgery, and she was approved for STD benefits from October 16, 2002 through November 10, 2002.

At work on November 20, 2002, the Plaintiff again experienced lower abdominal pain and was transported to the emergency room. She returned to work December 3, 2002 with various restrictions from her doctors. Her employer could not accommodate the restrictions, and so it advised Defendant Aetna that the Plaintiff would be applying for further STD benefits. Aetna approved benefits for the Plaintiff through January 14, 2003.

When the Plaintiff returned to work on January 15, 2003, she was given permanent restrictions by her doctor, who advised that she should not engage in repetitive twisting, turning, bending or lifting over 20 pounds indefinitely. Her employer again could not accommodate her restrictions.

A January 23, 2003 letter to the Plaintiff's doctor from Boeing describes ergonomic improvements to the Plaintiff's work station that the company hoped would "allow her to return to work." (AETNA000503, Dkt. #62, Tab 5). The letter describes "an increased work surface area, reconfiguration of computer set up, alteration of table height, and a fully adjustable ergonomic chair that will allow optimal body alignment . . ." (Id.) The letter asked the Plaintiff's doctor to review the information and advise Boeing whether the changes met the doctor's "intent for the level of restriction that is medically necessary." (Id.)

The Plaintiff's doctor replied to Boeing the following day. She stated, "[t]he accommodations that have been made for Ms. London should allow her to work within the limits of her subjective complaints. The intent of the limitations have been met." (Id. at AETNA000505).

1   A note in the Plaintiff's benefits file dated January 29, 2003, indicates that there were "no objective findings to support limitations," and that the accommodations made by Boeing should allow her to return to work. (AETNA000148, Dkt. #62, Tab 4). The note also points out that the Plaintiff's doctor authorized her return. (Id.)

Accordingly, on February 7, 2003, Aetna advised the Plaintiff that it would not approve further STD benefits, and that LTD benefits had therefore been denied. (AETNA000496, Dkt. #62, Tab 5). The letter informs the Plaintiff that Aetna's decision was based on an evaluation of medical information provided by her doctor, including the statement that the accommodations made by the employer should allow her to return to work. (Id.) The letter also points out that Aetna has "no way to gauge an individual's subjective pain complaints," and that it "must rely on the written medical evidence to document a functional impairment that would normally preclude someone from performing his or her regular job duties." (Id. at AETNA000497).

The letter informs the Plaintiff that she is entitled to a review of the decision. (Id.) It suggests that she submit additional medical information, specifically "clinical findings and test results that indicate that your condition is of the severity that would impair you from performing your occupation." (Id.)

The Plaintiff submitted additional medical records to Aetna from four of her doctors. The records indicated that the Plaintiff's abdominal pain was likely caused by irritable bowel syndrome and problems with adhesions from previous surgeries. Dr. Marge Butler concluded that the Plaintiff had recovered from the surgery that she had performed on her, and that she had no further limitations arising out of that surgery; instead the Plaintiff's pain was chronic, and with no surgical options for improvement.

Aetna informed the Plaintiff on February 27, 2003, that the additional records she had submitted did not warrant reversal of its decision to terminate her STD benefits. It invited her to appeal the decision, which she did the following day.

The Plaintiff argued in her appeal that her job required heavy lifting, twisting, pushing, pulling, and kneeling. She argued further that the new chair and table provided by

her employer did nothing to help her "physical medical conditions and restrictions." (AETNA000465-66, Dkt. #62, Tab 5).

On March 3, 2003, Aetna informed the Plaintiff by letter that it had begun a formal review of her STD claim. Aetna again advised her of the type of information that it would need to review her claim, including detailed reports "outlining in objective terms the specific mental or physical limitations and restrictions inherent to [her] condition." (Id. at AETNA 00456). It also informed her by telephone that it had no Physical Demands Analysis Worksheet on file for her position, and that it would request one from Boeing. (AETNA000132, Dkt. #62, Tab 4).

On March 3, 2003, a claims analyst from Aetna spoke with the Plaintiff at length by telephone regarding the requirements of her job. According to the analyst's notes, the Plaintiff was informed that Aetna was "required to assess her ability to perform the material duties of the occupation that her employer provided a description of." (Id. at AETNA000119). The analyst "read her the description that was sent by her employer," but the Plaintiff reiterated that the description was incorrect. (Id.) She maintained that her job, contrary to the description provided by Boeing, required heavy lifting and twisting. According to the notes, the analyst told the Plaintiff that if "she really felt that she was being evaluated unfairly for an occupation that was not her own that it was an issue to be addressed with her employer." (Id.)

At Aetna's request, the Plaintiff's file was reviewed by Dr. Brent T. Burton, a physician consultant. Dr. Burton disclosed his conclusions in a March 31, 2003 memorandum. (AETNA000437-40, Dkt. #62, Tab 5). He noted that there were no objective findings that would "indicate that [the Plaintiff] had a diagnosable condition other than irritable bowel syndrome . . . a condition that does not preclude her from working her own occupation or any similar sedentary or light occupation." (Id.)

On April 7, 2003, notes recorded in the Plaintiff's benefits file reveal that Aetna contacted her by telephone to inform her of the results of Dr. Burton's review. (AETNA000081, Dkt. #62, Tab 4). According to the call log, the Plaintiff informed Aetna

that "she had just come from her mental health provider's office." (Id.) Because Aetna had "no information in the file from [the Plaintiff's] mental health provider or cardiologist," it agreed to "extend the timeline for two more weeks if she had additional information to send." (Id.)

Dr. Donna Wicher (a "Psychological Physician Consultant") reviewed the additional information submitted by the Plaintiff's mental health provider. Her report indicated that the medical records provided for her review did "not support the diagnosis of a mental or nervous disorder." (AETNA000383, Dkt. #62, Tab 5). She concluded that there was "no indication that [the Plaintiff] has any limitations or restrictions with regard to her psychological functioning." (Id. at AETNA000384).

Dr. Burton reviewed additional information submitted by the Plaintiff's cardiologist. (Id. at AETNA000370). He concluded that the information "fails to document an impairment that would render [the Plaintiff] incapable of working in any capacity." (Id.)

On May 7, 2003, Aetna informed the Plaintiff by telephone that it would uphold the decision to terminate her STD claim. The Plaintiff again asserted that Boeing had lied about the material duties of her occupation. Aetna reminded her that it evaluated disability claims on the basis of job descriptions furnished by the employer, and encouraged her to address her concerns with Boeing.

The following day, Aetna followed up with a letter, informing the Plaintiff that it was upholding its termination of her STD claim. (Id. at AETNA000366-69). It provided a detailed description of the information it had considered, as well as the basis for its decision. (Id.)

Aetna acknowledged that the Plaintiff considered the description of her occupation to be inaccurate, and explained that it would "re-examine any claims decision in light of amended information regarding your job description *that is forwarded to us by your employer.*" (Id. at AETNA000368). Aetna further stated that it considers the term "Own Occupation" to mean "any employment . . . that involves material duties of the same general character as your regular and ordinary employment with the employer. Your Own

- 7 -

Occupation is not limited to your job with your employer." (Id.) To qualify for STD benefits, Aetna informed the Plaintiff, "you must be unable to perform your duties as a Data Processor for any supervisor or employer." (Id.)

### B. The Current Lawsuit

The Plaintiff filed her Third Amended Complaint against Aetna and BEBPC on December 5, 2006. She argues that both defendants, and particularly Aetna, abused their discretion by ignoring conflicting information in the administrative record. (Response, Dkt. #68). Furthermore, the Plaintiff argues that Aetna qualifies as an administrator. (Id.) Acting as both an administrator and a funding source for the benefit plans, she argues, constitutes a conflict of interest. (Id.) Finally, the Plaintiff asserts that Defendant BEBPC failed to comply with ERISA's procedural requirements. (Id.)

## III. Discussion

Plan administrators abuse their discretion if they:

    (1) "render decisions without any explanation";

    (2) "construe provisions of the plan in a way that conflicts with the plain language of the plan"; or

    (3) "rel[y] on clearly erroneous findings of fact in making benefit determinations."

Taft v. Equitable Life Assurance Society, 9 F.3d 1469, 1472-73 (9th Cir. 1994).

### A. Rendering Decisions Without Any Explanation

The Plaintiff concedes that "Aetna fully explained its reasons for terminating benefits." (Response, Dkt. #68).

### B. Construing Provisions of the Plan in a Way That Conflicts With the Plain Language of the Plan

The Plaintiff concedes that "Aetna accurately recites the STD Plan's definition of 'totally disabled.'" (Id.) She does dispute, however, Aetna's interpretation of the phrase "own occupation," because it assumes that her position did not require her to twist, turn, or lift heavy objects. (Id.)

1 | Aetna informed the Plaintiff that it "considers Own Occupation to mean any employment, business, trade, profession, calling or vocation that involves material duties of the same general character as your regular and ordinary employment with the employer." (AETNA000368, Dkt. #62, Tab 5). In order to qualify for benefits under its STD plan, the Plaintiff must have been unable to perform the duties of her job description "for any supervisor or employer." (Id.) Because Aetna viewed the Plaintiff's occupation as being in the "light range of work," it determined she was not disabled within the meaning of the policy. (AETNA000128; AETNA000101, Dkt. #62, Tab 4).

The Plaintiff asks this Court to reject Aetna's interpretation of "own occupation," despite the interpretation being consistent with Ninth Circuit precedent. See, e.g., Taft, 9 F.3d at 1473; Bendixen v. Standard Ins. Co., 185 F.3d 939, 944 (9th Cir. 1999) ("we hold that, as a matter of law, the plan administrator did not abuse its discretion by concluding that [the plaintiff] was not disabled . . . and that she could still work in her own occupation with another employer.").

In Ehrensaft v. Dimension Works Inc. Long Term Disability Plan, the plaintiff sued his employer's group disability insurer under ERISA in situations very similar to those alleged here. 120 F. Supp. 2d 1253 (D. Nev. 2000). In determining whether the plaintiff was disabled, the disability insurer used the description of his occupation as it was defined by the U.S. Department of Labor Dictionary of Occupational Titles. Id. at 1258. The plaintiff contended that the use of that description violated the language of the disability policy and the law, asserting that the insurer was "required to use the specific requirements of his 'job' rather than his 'occupation' as defined generally." Id. at 1259.

The court disagreed. It found the term "occupation" to constitute "a general description, not a specific one." Id. The court held that "the evaluation of disability should be made in light of the usual duties of that occupation and not depend on *ad hoc* peculiarities of a specific job or the requirements of a particular employer who may require activities beyond that generally contemplated by the 'occupation.'" Id. Accordingly, the insurer in its

- 9 -

administration of the plan "did not abuse its discretion in applying that definition of 'own occupation.'" Id.

The Plaintiff argues that Ehrensaft does not apply here, but does not specify why. In Ehrensaft, the court upheld the insurer's use of the U.S. Department of Labor Dictionary of Occupational Titles to define the plaintiff's occupation. There is arguably a stronger basis for upholding Aetna's definition of "own occupation" here, because the Plaintiff admits that her own "written job description for the Senior Administration Analyst position [does] not require Plaintiff to perform lifting, pushing, pulling, twisting, turning, bending, squatting or reaching to move heavy objects." (Complaint, Dkt. #36). Under the circumstances, the Court cannot conclude that Aetna has construed a plan provision in a manner inconsistent with the plain language of the plan.

### C. Relying On Clearly Erroneous Findings of Fact

The Plaintiff argues that Aetna's determination that she was not disabled was clearly erroneous. She argues that Aetna rejected her evidence, relied solely on Boeing's inconsistent description of her job, and never investigated to find out what her job entailed. Because the Court finds that Aetna's definition of "own occupation" is not inconsistent with the language of the plan, it was not required to investigate the actual and specific requirements of the Plaintiff's *job* with Boeing (as opposed to her occupation). Ehrensaft, 120 F. Supp. 2d at 1259.

Notwithstanding the issue of "own occupation," the Court still would not be left with the "definite and firm conviction that a mistake has been committed." Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir. 2005). Aetna pointed out that the Plaintiff's own doctor had authorized her to return to work, and had stated that the ergonomic accommodations made by Boeing should allow the Plaintiff to "work within the limits of [her] subjective complaints." (AETNA000460, Dkt. #62, Tab 5).

Aetna also informed the Plaintiff that it was relying on the occupational description furnished by Boeing. (Id. at AETNA000368). It reminded her that it "relies on the employer to furnish information regarding the . . . level of physical demand required." Id.

Furthermore, Aetna urged the Plaintiff to address the problem with Boeing if she believed the occupational description to be inaccurate. Id. The Plaintiff has not pointed to any part of the administrative record that references an attempt to get Boeing to submit a different occupational description.

Finally, Aetna advised the Plaintiff that independent medical consultants had reviewed her medical records, and that they failed to find a diagnosable condition that would support clinical findings of impairment. Id. Aetna appears to have completed a thorough investigation of her claim, and provided detailed reasoning for its denial.

The Plaintiff faults Aetna, however, for "ignoring its own record." (Response, Dkt. #68). She argues that she has consistently maintained that her job requires heavy lifting and twisting, and it constitutes an abuse of discretion to ignore this evidence. Id. She asserts that Aetna "simply took the word of its unidentified 'Medical Consultants,' 'Psychological Physician Consultants' and Boeing's managers . . . without investigating the accuracy or truth of the information." Id.

An administrator will not necessarily abuse its discretion even if there is evidence before it that would support the *opposite* decision. Bolling v. Eli Lilly and Co., 990 F.2d 1028, 1029-30 (8th Cir. 1993). Furthermore, "[i]n the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion." Taft v. Equitable Life Assurance Society, 9 F.3d 1469, 1473 (9th Cir. 1994). Although the Plaintiff points to evidence in the record that supports her version of her job duties, the Court cannot conclude, in light of the entire record, that Aetna abused its discretion in denying her claim.[3]

---

[3] The Plaintiff makes two other assertions that the Court will address only briefly here. The first is that the Plaintiff's job description "miraculously" changed when she sought STD and LTD benefits. Such an assertion ignores that the Plaintiff collected STD benefits from Aetna on three prior occasions.

The Plaintiff also urges the Court to be skeptical of Aetna's inconsistent reasons for denial of benefits, namely its "attempt to justify denial on [the Plaintiff's] other ailments that she brought to Aetna's attention during her appeal." (Response, Dkt. #68). The Court does not find that the reasons given by Aetna were inconsistent. Aetna analyzed the additional

- 11 -

### D. BEBPC's Failure to Comply With ERISA's Procedural Requirements

The Plaintiff argues that BEBPC, as a plan administrator, failed to delegate away its ERISA responsibilities, making it equally responsible for Aetna's abuse of discretion. In light of the Court's determination that Aetna did not abuse its discretion, the Court does not reach the issue.

### IV. Conclusion

Aetna appears to have conducted a thorough and well-documented review of the Plaintiff's claim. Aetna kept the Plaintiff informed, apprised her of the reasons for its decision, and even extended the deadline for her to submit additional medical documentation. Even in the letter denying her final appeal, Aetna offered to re-examine its claims decision in light of any amended information submitted by Boeing regarding the Plaintiff's job description. The totality of the administrative record, even viewed in light of the potential for a conflict of interest, does not reveal an abuse of discretion. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965 (9th Cir. 2006).

Accordingly, **IT IS ORDERED** that summary judgment be granted in favor of the ERISA defendants, BEBPC and Aetna (Dkt. #63).

DATED this 27th day of March, 2008.



_____
Mary H. Murguia
United States District Judge

---

information submitted by the Plaintiff to support her receipt of benefits, and determined that it was not sufficient to alter its conclusion that she was disabled.

- 12 -